******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROBERT H.*
(AC 36742)
(AC 37544)

Lavine, Sheldon and Flynn, Js.

*Argued November 17, 2015—officially released September 20, 2016*

(Appeal from Superior Court, judicial district of
Hartford, Suarez, J.)

*Glenn W. Falk*, assigned counsel, for the appellant
(defendant).

*Lisa Herskowitz*, senior assistant state's attorney,
with whom, on the brief, were *Gail P. Hardy*, state's
attorney, and *John F. Fahey*, senior assistant state's
attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Robert H., appeals from his conviction on one of two charges of risk of injury to, or impairing morals of a child in violation of General Statutes § 53-21 (a) (1),[1] of which he was found guilty after a jury trial. The defendant claims that there was insufficient evidence to support the jury's guilty verdict on the second of those two charges. Following the jury verdict, the defendant admitted that he had violated his probation in violation of General Statutes § 53a-32. Thereafter, the court sentenced the defendant on all three charges to a total effective sentence of twenty years incarceration.

The two charges of risk of injury of which the defendant was convicted were based upon separate acts of masturbation in the presence of a minor child, S.W. The defendant argues that the only evidence presented at trial to support the jury's finding that he had masturbated in S.W.'s presence on more than one occasion were two statements he made to police, which were admitted into evidence against him without objection at trial. The defendant now claims that such evidence was insufficient to support his conviction on a second charge of risk of injury because, under the corpus delicti rule, also referred to as the corroboration rule, there was not substantial independent evidence tending to establish the trustworthiness of his confession to a second act of masturbation in the presence of S.W. The state argues that the defendant's claim is unreviewable because the corroboration rule is a rule of evidence governing the admissibility of oral and written statements, and the defendant never challenged the admissibility of his statements at trial. Because this court recently held, in *State* v. *Leniart*, 166 Conn. App. 142, 152–53, 140 A.3d 1026 (2016), that the corroboration rule is solely a rule of admissibility, we agree with the state that the defendant cannot raise his unpreserved claim as part of his claim of insufficient evidence. Accordingly, it is not necessary for us to decide whether there was substantial independent evidence tending to establish the trustworthiness of the defendant's confession, and we will consider his unobjected-to statements in the light most favorable to the state in evaluating his current claim of evidentiary insufficiency. We conclude that the defendant's statements that he masturbated in the presence of S.W. "at least twice" provided a sufficient evidentiary basis for the jury reasonably to conclude that he was guilty beyond a reasonable doubt of both counts of risk of injury of which he was convicted.

The following facts are relevant to this appeal. On September 3, 2013, the defendant was charged in a long-form information with the following offenses: (1) sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2);[2] (2) sexual assault in the first degree in violation of § 53a-70 (a) (1);[3] (3) injury or risk

of injury to, or impairing morals of a child in violation of § 53-21 (a) (2);[4] (4) injury or risk of injury to, or impairing morals of a child in violation of § 53a-21 (a) (1); and (5) injury or risk of injury to, or impairing morals of a child in violation of § 53a-21 (a) (1).

At the defendant's jury trial in September 2013, S.W. testified as follows. When she was ten or eleven years old, the defendant, who was then her mother's boyfriend, would spend time at the home she lived in with her mother. In that time frame, two specific incidents occurred between her and the defendant. In one, she was lying in her bed when the defendant entered her bedroom, took his penis out, and started masturbating. He then ejaculated on her bed. After he had ejaculated on her bed, he wet a cloth and attempted to wipe his semen off the bed. In the second incident described by S.W., which occurred after the first incident, the defendant penetrated her either vaginally or anally with his penis while he and she were in the kitchen. Although S.W. testified that something "unusual" had occurred between her and the defendant on more than one occasion, she also testified that the defendant had only masturbated in her room on one occasion[5] and that the two specific incidents to which she testified were the only such incidents that had occurred between them.[6]

The defendant did not testify at trial. However, the state introduced into evidence a portion of a DVD recording of the defendant's interview with police and his sworn, written statement to the officer who interviewed him. In his sworn statement, the defendant admitted that he had masturbated in the presence of S.W. in her bedroom "at least twice." He averred, more particularly, as follows: "I was lying in [S.W.'s mother's] bed and could see [S.W.] in her bedroom, lying in her bed with her hands inside her pants. She was masturbating. She knew that I could see her but it was like she wanted me to see her. After watching her masturbate for about fifteen minutes I went into [S.W.'s] room. I stood about two or three feet away from her bed and, with my clothes on, pulled my penis out and started to masturbate myself. She seemed like she was happy with me doing that. I ejaculated in her general direction but not on top of her. I don't know if she came or not. This same thing happened at least twice, where I masturbated in front of her in her room and this [is] probably how my semen got on her bed or clothes. I never penetrated her with my penis or anything else. I think she might have touched my penis on one of those times right after I ejaculated, which might explain any of my semen in her pants." The defendant's sworn statement and the DVD recording of his police interview were both admitted into evidence without objection by the defendant.[7]

The defendant moved for a judgment of acquittal after the close of the prosecution's case-in-chief, at the

close of all the evidence, and again at his sentencing. He claimed on each occasion that there was no evidence to support a finding of two incidents of masturbation in S.W.'s presence because S.W. had testified to only one such incident, and thus the state assertedly could not establish that S.W. was harmed or affected by the alleged second incident if she was not even aware that it had occurred.[8] The state responded by noting that the risk of injury counts did not require that the child actually be aware of what the defendant was doing, only that the defendant's conduct was of such a nature that it was likely to impair the health or morals of a minor. The court denied each of the defendant's motions for judgment of acquittal, ruling that there was sufficient evidence for the jury to find that incidents of masturbation in S.W.'s presence had occurred on more than one occasion.

In the state's closing argument, it explained that the sexual assault alleged in counts one and two referred to the incident that S.W. claimed to have occurred in the kitchen, and that the charge of risk of injury alleged in count three was based upon that same alleged incident. The state further explained that the risk of injury charges set forth in counts four and five were based upon the two incidents in which the defendant allegedly had masturbated in the presence of S.W. The state specifically noted that the defendant had confessed to masturbating in the presence of S.W. at least twice. In the defendant's closing argument, defense counsel suggested that S.W.'s story had changed each time she told it, and again argued that she could not have been affected by a second masturbation incident if she only recalled one such incident.

After deliberating for approximately two and one-half hours, the jury returned verdicts of not guilty on the first three counts, relating to the alleged sexual assault in the kitchen, and guilty on counts four and five, relating to the two alleged incidents of masturbation in S.W.'s bedroom.

While the jury was deliberating, the court heard additional evidence on the charge of violation of probation under § 53a-32. On October 29, 2013, after the jury returned its guilty verdict on two counts of risk of injury, the defendant admitted to that charge on the basis of that verdict. Thereafter, on January 21, 2014, the court sentenced the defendant to ten years incarceration on each charge of risk of injury, to run concurrently with one another, and ten years incarceration on the charge of violation of probation, to run consecutively to his concurrent risk of injury sentences, for a total effective sentence of twenty years incarceration.

The defendant appeals, requesting that we vacate his conviction on one charge of risk of injury and remand this case for resentencing on the remaining charge of risk of injury and the charge of violation of probation.

The defendant claims that there was insufficient evidence to support a guilty verdict on two counts of risk of injury because the only evidence to support the finding that he had masturbated in the presence of S.W. on more than one occasion were his oral and written statements to the police. He argues that allowing his conviction on a second count of risk of injury to stand based solely upon his bare extrajudicial confessions would violate the corroboration rule. The state first argues that the defendant's claim is unreviewable because he failed to object to the admission of his statements at trial. If the claim is reviewable at all, the state argues, it must fail because there was sufficient evidence to corroborate the defendant's admission to a second act of masturbation in S.W.'s presence.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [W]e do not sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict of guilt beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Miles*, 97 Conn. App. 236, 240, 903 A.2d 675 (2006).

"The corpus delicti rule, which is often also referred to as the corroboration rule, exists to protect against conviction of offenses that have not, in fact, occurred, in other words, to prevent errors in convictions based solely upon untrue confessions to nonexistent crimes. *State* v. *Arnold*, 201 Conn. 276, 287, 514 A.2d 330 (1986). An early version of Connecticut's corroboration rule was extensively discussed in *State* v. *Doucette*, 147 Conn. 95, 98–100, 157 A.2d 487 (1959), overruled in part by *State* v. *Tillman*, 152 Conn. 15, 20, 202 A.2d 494 (1964). The court in *Doucette* described the rule as follows: [T]he *corpus delicti* [that is, that the crime charged has been committed by someone] cannot be established by the extra-judicial confession of the defendant unsupported by corroborative evidence. . . .

"The Connecticut rule . . . is that, although the confession is evidence tending to prove both the fact that the crime [charged] was committed [by someone, that is, the corpus delicti] and the defendant's agency therein, it is not sufficient of itself to prove the former,

and, without evidence [from another source] of facts also tending to prove the corpus delicti, it is not enough to warrant a conviction; and that there must be such extrinsic corroborative evidence as will, when taken in connection with the confession, establish the corpus delicti in the mind of the trier beyond a reasonable doubt. . . . The independent evidence must tend to establish that the crime charged has been committed and must be material and substantial, but need not be such as would establish the corpus delicti beyond a reasonable doubt apart from the confession. . . . Properly this [extrinsic] evidence should be introduced and the court satisfied of its substantial character and sufficiency to render the confession admissible, before the latter is allowed in evidence. *State* v. *LaLouche*, [116 Conn. 691, 695, 166 A. 252 (1933)]. . . . *State* v. *Doucette*, supra, 147 Conn. 98–100." (Emphasis in original; internal quotation marks omitted.) *State* v. *Leniart*, supra, 166 Conn. App. 152–53.

The current version of the rule, set forth in *Opper* v. *United States*, 348 U.S. 84, 93, 75 S. Ct. 158, 99 L. Ed. 101 (1954), and followed by our Supreme Court in *State* v. *Harris*, 215 Conn. 189, 192–97, 575 A.2d 223 (1990), and *State* v. *Hafford*, 252 Conn. 274, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000), states that "the corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti. It is [only] necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the [defendant's] statement." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Harris*, supra, 193–94.

In *State* v. *Leniart*, supra, 166 Conn. App. 142, this court considered whether the corroboration rule is a "substantive rule of criminal law, i.e., an implicit element of the state's case for which there must be sufficient evidence"; id., 158; or "an evidentiary rule that must be raised by objecting to the admission of the defendant's confessions at trial . . . ." Id. After conducting a thorough review of the history of the rule's evolution in Connecticut, the court in *Leniart* concluded "that Connecticut's corroboration rule is a rule of admissibility to be decided by the court. A defendant who fails to challenge the admissibility of the defendant's confession at trial is not entitled to raise the corroboration rule on appeal because (1) the evidentiary claim is not of constitutional magnitude and, thus, cannot meet *Golding*'s[9] second prong; see *State* v. *Uretek, Inc.* [207 Conn. 706, 713, 543 A.2d 709 (1988)]; and (2) the rule does not implicate the sufficiency of the state's evidence." *State* v. *Leniart*, supra, 168.

In the present case, the defendant never claimed at trial, and does not claim on appeal, that the admission into evidence of his confessions violated the corrobora-

tion rule. Accordingly, we must consider his statements as probative evidence of the facts admitted therein in evaluating his sufficiency of the evidence claim.[10] See id., 168–69. When we consider the defendant's statements in the light most favorable to upholding his challenged conviction, we conclude that there was sufficient evidence to support his conviction of a second count of risk of injury. The defendant admitted that he masturbated in the presence of S.W. on at least two occasions. Moreover, his admission included the facts that S.W. watched him masturbating, and even touched his penis on one occasion. The jury was free to credit this testimony over the testimony of S.W., who testified that she remembered him masturbating in her presence on only one occasion. The defendant's statements, therefore, provided sufficient evidence for the jury to conclude that, on two separate occasions, he masturbated in the presence of S.W., and thereby engaged in an act "likely to impair the health or morals" of a child in violation of § 53-21 (a) (1). We thus conclude that the jury reasonably could have concluded that the defendant was guilty beyond a reasonable doubt of two counts of risk of injury in violation of § 53-21 (a) (1). See *State* v. *Miles*, supra, 97 Conn. App. 240.

The judgment is affirmed.

In this opinion LAVINE, J. concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of . . . a class C felony . . . ."

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[3] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

[4] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

[5] S.W. testified as follows:

"[The Prosecutor]: Okay, now you said multiple things happened between [the defendant] and you. Could you tell the ladies and gentleman of the jury what happened between [the defendant] and you?

"[S.W.]: Let me understand, like both of them, or just one?

"[The Prosecutor]: Well, let's start with one. Do you remember when exactly that happened?

"[S.W.]: Not exactly, but I know like what happened.

"[The Prosecutor]: Okay, could you tell the ladies and gentleman of the jury?

"[S.W.]: Once I was in my room, you know those—I was watching TV or something, and then my mom—I forgot where she was at, and then he just came over and just—just—it was nasty.

"[The Prosecutor]: What did he do?

"[S.W.]: In—he took the penis out, and just started masturbating.

"[The Prosecutor]: Okay, now at the time when you were ten or eleven in fifth grade, did you know what he was doing?

"[S.W.]: No, not at all.

"[The Prosecutor]: Did something happen while he was masturbating?

"[S.W.]: Yes.

"[The Prosecutor]: What happened?

"[S.W.]: He comed on my bed.

"[The Prosecutor]: Okay, and did any hit you?

"[S.W.]: Uh-uh. . . .

"[The Prosecutor]: Did there come a point where anything similar to that happened?

"[S.W.]: Yes. . . .

"[The Prosecutor]: Okay, did there come a point where anything similar to that happened—

"[S.W.]: Yes.

"[The Prosecutor]: —where he did in your room another time?

"[S.W.]: No."

[6] S.W. also testified as follows:

"[The Prosecutor]: All right now you've talked about two separate incidents that you recall specifically. In the time that [the defendant] had contact with you, or that you knew him, did any other things like that ever happen?

"[S.W.]: No.

"[The Prosecutor]: Okay, those were the only two things you recall?

"[S.W.]: Yes."

[7] Prior to trial, the court denied the defendant's August 5, 2013 motion to suppress all of his statements on the ground that the police had failed to inform him of his *Miranda* rights. See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). On appeal, the defendant does not claim that the court improperly denied his motion to suppress.

[8] The only time that the corroboration rule was mentioned at trial was by the state. It argued, in responding to the defendant's claims that S.W. had testified to only one act of the defendant masturbating in her presence, that DNA extracted from semen found on S.W.'s bedspread, which was consistent with the defendant's DNA sample, corroborated at least one act of masturbatory conduct, and thus satisfied the corpus delicti rule.

[9] See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

[10] We respectfully disagree with the dissent that it was necessary for the state to present "corroborative evidence of injury to the victim" in order to introduce and rely upon the defendant's confession as substantive evidence of his guilt on a second charge of risk of injury based upon a second alleged instance of masturbation in S.W.'s presence. First, evidence tending to prove such an injury, if an injury is required for the crime charged, is evidence of the corpus delicti, which the *Hafford* and *Leniart* cases hold to be unnecessary. Here, moreover, the crime at issue—risk of injury to, or impairing morals of a child—is not a crime resulting in injury or loss. *State* v. *Eastwood*, 83 Conn. App. 452, 476, 850 A.2d 234 (2004) ("Lack of an actual injury to . . . the . . . morals of the victim is irrelevant . . . actual injury is not an element of the offense. . . . [T]he creation of a prohibited situation is sufficient."). Accordingly, this case does not raise the same concerns as our dissenting colleague noted in *Leniart*, in which he cited the following footnote in *Hafford*: "We note, however, that proving the trustworthiness of a defendant's confession to a crime resulting in injury or loss often will require evidence of that injury or loss. For example, a confession to a homicide likely would not be trustworthy without evidence of the victim's death." (Internal quotation marks omitted.) *State* v. *Leniart*, supra, 166 Conn. App. 229 (*Flynn*, *J.*, dissenting in part, concurring in part, and concurring in the result). Hence, the absence of such directly corroborative evidence of a second act of masturbation by the defendant in the presence of S.W. would not require exclusion of his confession as evidence that he committed that act.

Here, in fact, there is substantial evidence tending to corroborate the trustworthiness of the defendant's statements admitting to having masturbated in S.W.'s presence at least twice. First, the admission of such conduct was sworn to before a police officer, who also videotaped his statement with his knowledge and consent. Such a statement could not have been more obviously against the defendant's penal interest, which is a well-recognized index of its trustworthiness. People do not lightly admit a crime

and place critical evidence in the hands of the police in the form of their own admissions. *United States* v. *Harris*, 403 U.S. 573, 583, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971) ("[a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search"). Secondly, critical portions of the defendant's statements—particularly those concerning one alleged incident of masturbation in S.W.'s presence that she recalled—were fully corroborated by her detailed trial testimony. Corroboration of the defendant's admission as to one act, detailing its time frame, its location and its essential descriptive details, surely lends credibility to the defendant's admission that he committed a similar act a second time, in the same location, in the same general manner and for the same illicit purpose. Thirdly, the defendant's admitted conduct in S.W.'s presence on at least one occasion was strongly corroborated by physical evidence establishing the presence of the defendant's DNA in a semen sample removed for forensic analysis from S.W.'s stained bedspread. See footnote 8 of this opinion.

Against this background, had the admissibility of the confession been challenged at trial under the corroboration rule, that challenge would surely have failed. Even if S.W.'s trial testimony and the state's forensic evidence only furnished direct corroboration of the corpus delicti of one crime of risk of injury based upon the defendant's admitted masturbation in S.W.'s presence in her bedroom, such partial corroboration of his entire statement, under circumstances where he was clearly acting against his own penal interest, undoubtedly tended to produce a confidence in the truth of the other part of the confession.