## STATE OF CONNECTICUT *v.* CARL GRANT
## (AC 31318)

Beach, Alvord and Pellegrino, Js.

Argued November 18, 2010—officially released April 5, 2011

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, *Michael E. Kennedy*, senior assistant state's attorney, and *Eric Washer*, certified legal intern, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Carl Grant, appeals from the judgment of conviction, rendered after a jury trial, of possession of cocaine in violation of General Statutes § 21a-279 (a), possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a), possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of

General Statutes § 21a-278a (b) and interfering with an officer in violation of General Statutes § 53a-167a. On appeal, the defendant claims that (1) the court improperly admitted hearsay evidence at trial, (2) there was insufficient evidence to prove that the defendant possessed narcotics with the intent to sell within 1500 feet of a public housing project and (3) the statutory term "public housing project," contained in § 21a-278a (b), is void for vagueness. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the afternoon of September 13, 2007, New London police officers went to 24 Connecticut Avenue in New London to execute a search and seizure warrant related to narcotics activity at that address. Upon arriving at the scene, Officer Brian Laurie witnessed the defendant standing in front of the residence. Laurie identified himself to the defendant, stated that he had a warrant to enter and search the premises and instructed the defendant not to run. The defendant ran inside the residence and locked the door, forcing the police to use a battering ram to gain entry into the home.

Upon entering the home, Laurie heard a toilet flushing and witnessed the defendant exiting the bathroom. After the defendant refused to comply with the officers' instruction that he get on the floor, the officers physically forced him to the ground and forcibly handcuffed his hands behind his back. During their search of the residence, officers discovered two rocks of crack cocaine, assorted pills, digital scales, plastic bags commonly used to package drugs and more than $1400 in cash. A cellular telephone belonging to the defendant rang numerous times during the search and was eventually answered by Officer Deana Nott in order to perform

a "reversal"[1] in which she pretended to be the defendant's girlfriend. According to Nott, the male caller stated that "[h]e was looking for one," which she understood to mean that he wanted one rock of crack cocaine. The caller also stated that he was a little short of the $20 needed for the purchase and would be arriving a few minutes later in a green colored vehicle.

Shortly thereafter, a male and a female arrived in a green vehicle to purchase narcotics. The male, Noel Soto, approached the back door with $18 and subsequently was arrested for criminal attempt to possess crack cocaine. Thereafter, the defendant was arrested and charged with possession of cocaine in violation of § 21a-279 (a), possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of § 21a-278a (b) and interfering with an officer in violation of § 53a-167a. After a jury trial, the defendant was found guilty on all counts except for the charge of possession of narcotics with intent to sell by a person who is not drug-dependent. The jury found the defendant guilty of the lesser included offense of possession of narcotics with intent to sell in violation of § 21a-277 (a). The court sentenced the defendant to a total effective term of fifteen years incarceration, execution suspended after nine years, with five years probation. The defendant appeals that conviction. Additional facts will be provided as necessary.

I

The defendant first claims that the court improperly admitted the utterances of a cellular telephone caller concerning the purchase of drugs. We disagree.

---

[1] According to the testimony of Laurie, a reversal is a method by which an officer, pretending to be an associate of a suspected drug dealer, attempts to bring the caller to a certain location for the purchase of narcotics.

First, we set forth our standard of review. "To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *L. W.*, 122 Conn. App. 324, 329, 999 A.2d 5, cert. denied, 298 Conn. 919, 4 A.3d 1230 (2010). Here, because the defendant challenges whether the court properly admitted evidence of the utterances of a cellular telephone caller, our review is plenary.

Through the testimony of Nott, the state sought to admit evidence of the conversation that transpired when she answered the defendant's cellular telephone. The defendant objected to the proffered testimony, arguing that it was inadmissible hearsay. The state argued that the testimony was admissible as a verbal act.[2] The court agreed with the state's analysis and allowed Nott to testify before the jury as to the telephone call. During her testimony, Nott asserted that a man on the phone asked her for "one," which, based on her training, she understood to mean crack cocaine. She also testified that the caller stated that he "was a little short" of the $20 needed to pay for the drugs, which she testified was generally the standard price for a "rock" of crack cocaine. Lastly, she testified that the caller asserted that he would be arriving a few minutes later in a green colored car.

[2] "A verbal act is an out-of-court statement that causes certain legal consequences, or, stated differently, it is an utterance to which the law attaches duties and liabilities . . . [and] is admissible nonhearsay because it is not being offered for the truth of the facts contained therein." (Internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 255, 856 A.2d 917 (2004).

The court admitted Nott's testimony not for the purpose of proving the truth of the statements asserted by the caller, but as evidence that the defendant had received a telephone call from a caller who was attempting to purchase narcotics. See *State* v. *Tolisano*, 136 Conn. 210, 214, 70 A.2d 118 (1949) (statements by anonymous callers to suspected bookie's apartment admissible because statements offered not for truth of their content but as proof of verbal acts of placing bets). Because Nott's testimony was offered as proof of the caller's verbal act and not as inadmissible hearsay, we conclude that the court properly admitted that evidence.

## II

The defendant next claims for the first time on appeal that the evidence adduced at trial was insufficient to sustain his conviction of possession of narcotics with intent to sell within 1500 feet of a public housing project. The defendant specifically alleges that the evidence was insufficient to establish that the nearby Riozzi Court housing project is a public housing project. We disagree.

"[T]he [d]ue [p]rocess [c]lause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). "[A]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs [set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)]. Accordingly, we conclude that no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, thus, review the challenge as we do any other properly preserved claim." (Internal quotation marks omitted.)

"The standard of review [that] we [ordinarily] apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Hedge*, 297 Conn. 621, 656–57, 1 A.3d 1051 (2010).

Section 21a-278a (b) prohibits any person from "transporting with the intent to sell or dispense, [or] possessing with the intent to sell or dispense . . . any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising . . . a public housing project . . . ." "For the purposes of this subsection, 'public housing project' means dwelling accommodations operated as a state or federally subsidized multifamily housing project by a housing authority, nonprofit corporation or municipal developer, as defined in section 8-39, pursuant to chapter 128 or by the Connecticut Housing Authority pursuant to chapter 129." General Statutes § 21a-278a (b).

At trial, the jury heard testimony from Laurie and George Potts, a police officer, from which it reasonably could have concluded that the Riozzi Court housing project was a public housing project. Potts described the housing project as "a federally subsidized, elderly/disabled housing complex . . . in New London," run by "[t]he city of New London housing authority." Laurie similarly testified that the Riozzi Court neighborhood

was "an elderly apartment complex owned and operated by the city of New London housing authority." There was no evidence in the record to suggest that the Riozzi Court housing project was anything other than a public housing project. Thus, in construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have concluded that the Riozzi Court housing project is a public housing project, and that the cumulative force of the evidence established the defendant's guilt beyond a reasonable doubt.

### III

Finally, the defendant claims that the definition of "public housing project," as defined in § 21a-278a (b), is void for vagueness. We disagree.

We begin by setting forth the relevant legal principles. "A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, [and the court makes] every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to him, the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . .

"The general rule is that the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. . . . To do otherwise, absent the appearance that the statute in question intrudes upon fundamental guarantees, particularly first amendment freedoms, would be to put courts in the undesirable position of considering every conceivable situation

which might possibly arise in the application of [the statute]." (Internal quotation marks omitted.) *State* v. *Kalman*, 93 Conn. App. 129, 138–39, 887 A.2d 950, cert. denied, 277 Conn. 915, 895 A.2d 791 (2006)

We conclude that the definition of "public housing project" in § 21a-278a (b), by its plain terms, afforded the defendant notice that the statute applied to public housing projects where elderly or disabled people reside. Further, the state was not required to prove that the defendant knew that he was within 1500 feet of a public housing project when he engaged in the sale of narcotics. See *State* v. *Denby*, 235 Conn. 477, 482, 668 A.2d 682 (1995). Accordingly, the defendant has not demonstrated that a constitutional violation exists.

The judgment is affirmed.

In this opinion the other judges concurred.