# STATE OF CONNECTICUT *v.* CARLOS OCASIO
## (AC 32794)

Lavine, Sheldon and Mihalakos, Js.

Argued September 25, 2012—officially released January 8, 2013

*Robert J. McKay*, assigned counsel, for the appellant (defendant).

*Jonathan J. Silva*, certified legal intern, with whom were *Harry Weller*, senior assistant state's attorney, and, on the brief, *John C. Smriga*, state's attorney, and *Joseph J. Harry*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Carlos Ocasio, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree with a firearm in violation of General Statutes § 53a-59 (a) (5), commission of a class A, B or C felony with a firearm in violation of General Statutes §§ 53a-59 (a) (5) and 53-202k, and conspiracy to commit assault in the first degree with a firearm in violation of General Statutes §§ 53a-59 (a) (5) and 53a-48.[1] On appeal, the defendant claims that there was insufficient evidence produced at trial to prove his guilt of these crimes beyond a reasonable doubt. We affirm the judgment of the trial court.

The relevant facts, as the jury reasonably could have found, concern a shooting on August 16, 2009. Approximately one week before the shooting, the defendant's girlfriend confronted Hector Alicea, the father of her infant son, about why Alicea did not come to see his son more often. Their confrontation escalated to a physical altercation, which the defendant and his girlfriend's stepfather, Victor Baez, joined.

---

[1] The defendant also was charged with criminal possession of a firearm in violation of General Statutes § 53a-217 (a), and following a trial to the court, was convicted of that charge. The defendant does not challenge this conviction on appeal.

In the following days, the defendant told Jasmine Figueroa, the mother of Alicea's other son, that he wanted to "kill [Alicea], kill him, f--k him up," and he told Figueroa's mother, Eleanor McClain, that he was going to "kill" Alicea. On the night of the shooting, Figueroa noticed the defendant's car in the parking lot of the building where she was living with McClain, Tasha Shelton and Andrea Yarde. Figueroa, McClain, Shelton and Yarde followed the defendant after they saw him leave the parking lot; they found him in his car on Shelton Street with Baez and William Young. McClain approached the defendant and asked why he had driven by her house; he responded that he wanted to find Alicea because "I told you I'm gonna get him, I'm gonna kill him."

Figueroa then contacted Alicea to advise him that the defendant had driven by her home. She, Yarde and Shelton picked up Alicea a short time later and drove toward Shelton Street. When Alicea saw the defendant's car parked on Shelton Street, he jumped out of the vehicle, pulled out a knife and began puncturing the defendant's tires.

McClain drove onto Shelton Street as Alicea was puncturing the tires. She exited her vehicle and was standing near the defendant's car when she noticed the defendant, Young and Baez walking down the street. As McClain watched, Young—who was holding a gun— took two more guns out of his pockets and passed them to Baez and the defendant. McClain then saw the defendant raise his arm and fire three shots in the direction of the car as Alicea was stabbing the right front tire.

As he was bent puncturing the tire, Alicea heard the shots and felt an impact and pain in his back. He turned and saw the defendant with a gun in his hand.[2] He then

---

[2] Figueroa also turned after she heard the gunshots and saw the defendant with a gun in his hand.

"jumped up and flew like Superman through [Shelton's] driver's window," and told Shelton to "take me to the hospital, I got shot."

Shelton, Figueroa and Yarde drove Alicea to the hospital, where he was treated for injuries described in medical records as a "large and relatively deep contusion of the soft tissue of the back" accompanied by two abrasions. The attending physician testified that the injuries conceivably could be consistent with Alicea being "grazed off the back by an object" while squatting.

In the car on the way to the hospital, Figueroa called 911 to report the incident. When the first officer responded to the scene, he saw three men—the defendant, Young and Baez—on the sidewalk. The defendant told the officer that he and the others had jumped in the bushes when they heard shooting, and that they saw two cars flee the scene. Young and Baez corroborated the defendant's story. Because the officers assumed that the three men were witnesses, and not suspects, they allowed Young to go to his apartment for a drink of water.[3] Young subsequently returned to the scene.

Meanwhile, at the hospital, Figueroa, McClain and Yarde had spoken to police, and McClain named the defendant as the shooter. Alicea also spoke to police; he indicated that he received knife wounds to his hands not from slashing the defendant's tires, but by grabbing a knife from the defendant. He also told police that a man named "Billy," i.e., Young, shot him.[4]

When the police on Shelton Street received this information from the officer at the hospital, they began treating the defendant, Young and Baez as suspects and

---

[3] Young's apartment is next door to his father's house, where the defendant claims Young hid the gun involved in the shooting.

[4] Alicea testified that he told police at the hospital an untrue story because he "didn't want to get in trouble for . . . having the knife in my hand, stabbing the tires."

eventually arrested them after Figueroa, McClain and Yarde identified the defendant as the shooter. Young then consented to officers searching his home for weapons. Police recovered all but one gun registered to him: a .40 caliber Espana Astra. Police also searched the area of the shooting; they found a knife in front of the defendant's car and a spent .40 caliber bullet lodged in the pavement in front of the car. As a firearms expert testified, the caliber and rifling characteristics of the gun that fired the bullet were consistent with Young's missing .40 caliber gun. Additionally, the bullet had sustained damage consistent with its having "glanced off of something" at an angle.

At the conclusion of the trial, the jury found the defendant guilty on all three counts. The defendant elected to have a fourth count tried to the court. See footnote 1 of this opinion. Following the subsequent court trial and conviction, the defendant was sentenced to a total effective term of fifteen years incarceration, execution suspended after nine years, with three years probation. This appeal followed.

The defendant claims that there was insufficient evidence to prove his guilt beyond a reasonable doubt. Specifically, he contends that the state failed to prove that he (1) discharged a firearm toward Alicea, (2) caused physical injury to Alicea and (3) entered into an agreement to commit assault in the first degree.

"The standard of review [that] we [ordinarily] apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the

evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Grant*, 127 Conn. App. 654, 660, 14 A.3d 1070, cert. denied, 301 Conn. 910, 19 A.3d 179 (2011). "[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 808, 911 A.2d 1099 (2007). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) Id., 809.

The defendant first claims the state failed to prove that he discharged a firearm toward Alicea and caused physical injury to Alicea, as required to convict him of assault in the first degree with a firearm in violation of § 53a-59 (a) (5)[5] and commission of a class A, B or C felony with a firearm in violation of §§ 53a-59 (a) (5) and 53-202k.[6] Specifically, he contends that the state presented no witnesses who saw him shoot Alicea or who saw Alicea get shot, no testimony that Alicea was injured by a bullet, no weapon and no evidence that

[5] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm." General Statutes § 53a-3 (3) defines "physical injury" as "impairment of physical condition or pain."

[6] General Statutes § 53-202k provides in relevant part: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays . . . any firearm . . . shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

the bullet found on the street was connected to the shooting. We disagree.

First, contrary to the defendant's assertions, our review of the record reveals ample evidence supporting the jury's determination that the defendant discharged a firearm toward Alicea. Indeed, the state presented eyewitness testimony that the defendant raised and fired a gun three times in Alicea's direction. See, e.g., *State* v. *Caracoglia*, 95 Conn. App. 95, 128, 895 A.2d 810 ("[t]he testimony of one credible witness is sufficient evidence to convict one accused of a crime"), cert. denied, 278 Conn. 922, 901 A.2d 1222 (2006).[7] Bolstering this testimony were three additional witnesses, including Alicea, who testified that they saw the defendant with a gun immediately before or after the shooting and heard no more than three shots fired.[8] The jury also heard testimony regarding the defendant's potential motive to shoot Alicea, including the prior physical altercation and the defendant's threats that he wanted to "kill [Alicea]" and "f–k him up." See *State* v. *Lopez*, supra, 280 Conn. 795 (although not element to be proved, motive strengthens state's case).

---

[7] The defendant attempts to cast doubt on this eyewitness testimony by pointing to various testimonial inconsistencies, including Alicea's conflicting original statement to police identifying "Billy" as the shooter. It is well settled, however, that "[e]vidence is not insufficient . . . because it is conflicting or inconsistent." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 133 Conn. App. 721, 726, 36 A.3d 724, cert. granted on other grounds, 304 Conn. 915, 40 A.3d 784 (2012). Rather, the jury "[weighs] the conflicting evidence and . . . can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) Id. "[T]he question of [the] identity of a perpetrator of a crime is a question of fact that is within the sole province of the jury to resolve"; (internal quotation marks omitted) *State* v. *Felder*, 99 Conn. App. 18, 24, 912 A.2d 1054, cert. denied, 281 Conn. 921, 918 A.2d 273 (2007); and we do not revisit the jury's credibility determinations. See, e.g., *State* v. *Russell*, 101 Conn. App. 298, 316, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007).

[8] Two of the witnesses testified that they heard three "pops," and Alicea testified that he heard "two to three" gunshots.

Similarly, the evidence was sufficient for the jury reasonably to conclude that the defendant caused injury to Alicea with a bullet. Most significantly, Alicea testified that he had been shot and had received treatment for a gunshot wound. See id., 814 (claim of insufficient evidence to establish bullet wound rejected where victim "testified unequivocally that he had received and had been treated for two bullet wounds"). Considerable evidence also supports the conclusion that Alicea was injured by a bullet. The jury heard testimony that the defendant fired three shots in Alicea's direction as Alicea knelt beside the defendant's car, and that Alicea felt an impact and pain in his back immediately after the shots were fired. The jury also heard medical testimony indicating that Alicea's injuries were consistent with an object grazing his back as he bent over, as well as expert firearms testimony that a bullet found in the roadway beyond Alicea had glanced off of something at an angle and matched the caliber and rifling characteristics of the one gun missing from Young's collection.[9] The jury reasonably could have concluded that the cumulative force of this evidence established the defendant's guilt beyond a reasonable doubt, and, accordingly, we reject the defendant's claim that the evidence was insufficient to convict him of assault in the first degree with a firearm and commission of a class A, B or C felony with a firearm.

The defendant next claims that the state failed to prove that he entered into an agreement with Young to assault Alicea, as required to convict him of conspiracy

[9] Though the defendant challenges the sufficiency of the evidence in part because the state did not produce the actual weapon used, the jury reasonably could have used their common sense and experience to infer that the gun missing from Young's collection—which matched the bullet fragment found at the scene—was the gun Young passed to the defendant as they were approaching Alicea, and which Young hid after the defendant used it to shoot Alicea. See *State* v. *Otto*, 305 Conn. 51, 70 and n.17, 43 A.3d 629 (2012).

to commit assault in the first degree with a firearm in violation of §§ 53a-48 and 53a-59 (a) (5).[10] We are not persuaded.

"While the state must prove an agreement [to establish a conspiracy], the existence of a formal agreement between the conspirators need not be proved because [i]t is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. . . . [T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts." (Internal quotation marks omitted.) *State* v. *Douglas*, 126 Conn. App. 192, 202, 11 A.3d 699, cert. denied, 300 Conn. 926, 15 A.3d 628 (2011).

Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence for the jury reasonably to infer that the defendant entered into, and had intended to enter into, an agreement with Young to commit assault in the first degree. The jury heard testimony that: (1) Young was present when the defendant told McClain, "I'm gonna get [Alicea], I'm gonna kill him"; (2) Young and the defendant approached Alicea together on the night of the shooting; (3) Young passed a gun to the defendant as they approached Alicea; (4) Young stayed with the defendant during and after the shooting; (5) Young and the defendant told police the same untrue story about the shooting; and (6) Young helped to conceal the gun after the shooting. See, e.g., *State* v. *Millan*, 290 Conn. 816, 826–28, 966 A.2d 699 (2009) (coconspirators' prior

---

[10] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." The defendant challenges only the sufficiency of the evidence regarding his entry into an agreement.

knowledge of dispute between defendant and victim and "conduct at the scene" provided evidence of agreement); *State* v. *Elsey*, 81 Conn. App. 738, 747, 841 A.2d 714 ("the jury could have based at least part of its decision regarding the conspiracy charges on the defendant's decision to come to the scene of the crime with the coconspirators, stay at the scene while the crimes were committed and leave the scene with the coconspirators"), cert. denied, 296 Conn. 901, 852 A.2d 733 (2004).

The judgment is affirmed.

In this opinion the other judges concurred.