******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CHIFFON MILNER
(AC 40322)

DiPentima, C. J., and Sheldon and Moll, Js.*

*Syllabus*

Convicted, after a bench trial, of the crime of criminal possession of a firearm in connection with the shooting death of C, the defendant appealed to this court. An individual, R, who lived in a residence adjacent to the area where the shooting occurred, witnessed an individual shoot at C. Another witness, S, testified that the shooter, who was wearing a white tank top, pointed and fired a gun. The defendant was charged in connection with the incident with murder and criminal possession of a firearm. He elected a jury trial on the charge of murder, and the jury returned a verdict of not guilty. Thereafter, the court conducted a separate trial on the charge of criminal possession of a firearm, and the court found the defendant guilty. *Held*:

1. The defendant could not prevail on his claim that the evidence was insufficient to sustain his conviction because the trustworthiness of his alleged inculpatory statements to a former friend, B, on which the trial court principally relied for finding him guilty, were not corroborated by substantial independent evidence, in violation of the corpus delicti rule; the defendant did not dispute that independent evidence tended to establish that a shooting occurred, that he was at the scene of the shooting, and that he was drinking with the victim at that location before the two engaged in a physical altercation, and the state adduced substantial independent evidence of the trustworthiness of the defendant's statements to B, including DNA and forensic evidence linking the defendant to the scene at the time of the shooting and S's testimony linking the defendant to a white tank top worn by the shooter, providing ample corroboration of the defendant's statements to B that he then possessed a firearm.

2. The defendant could not prevail on his claim that, even if the state had satisfied the requirements of the corpus delicti rule with respect to his statements to B, B's testimony and that of the state's other witnesses was too unreliable to support his conviction: the state and the defendant stipulated that he had been convicted of a felony, and evidence was presented that the defendant possessed a firearm capable of discharging a shot because two witnesses saw the shooter holding the weapon and heard the shooter discharge it five times in rapid succession, with one such discharge firing a bullet that caused C's death; moreover, the defendant told B that he and C had a physical altercation because C wanted the defendant's gun, and that he shot C with that gun when C, who had previously knocked the defendant unconscious in the altercation, began to reapproach the defendant after he had regained consciousness; this admission, combined with other independent evidence, furnished a sufficient evidentiary basis for the court to find beyond a reasonable doubt that the defendant committed the crime of criminal possession of a firearm.

Argued January 23, 2019—officially released June 2, 2020

*Procedural History*

Substitute information charging the defendant with the crimes of murder and criminal possession of a firearm, brought to the Superior Court in the judicial district of Hartford, where the charge of murder was tried to the jury before *Crawford, J.*; verdict of not guilty; subsequently, the charge of criminal possession of a firearm was tried to the court; finding of guilty; judgment of guilty in accordance with the court's finding, from which the defendant appealed to this court. *Affirmed.*

*Richard E. Condon*, senior assistant public defender, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robin D. Krawczyk*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Chiffon Milner, appeals from the judgment of conviction, following a trial to the court, of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). On appeal, the defendant claims that the evidence was insufficient to sustain his conviction because (1) the court improperly relied on his inculpatory statements to a former friend, Kevin Barco, in the absence of substantial independent evidence corroborating the trustworthiness of those statements, in violation of the corpus delicti rule, and (2) even if the state satisfied the requirements of the corpus delicti rule with respect to the defendant's statements to Barco, Barco's testimony and that of the state's other witnesses was too unreliable to support the defendant's conviction. We affirm the judgment of the trial court.

The state presented the following evidence. In the early morning hours of July 12, 2014, a group of people were drinking alcohol, playing music, and gambling in the parking lot/courtyard of a U-shaped apartment complex located at 30 Auburn Street in Hartford. A three-family residence located at 18 Auburn Street was adjacent to the parking lot/courtyard and driveway of 30 Auburn Street. Rhonda Burney, who lived on the second floor of 18 Auburn Street, was awakened at approximately 4:30 a.m. on July 12, 2014, by the sound of "[a]rguing." When Burney went to the front porch of her apartment to investigate, she saw two individuals arguing. She then saw one of the two individuals (the shooter), whom she could not later identify or describe, shoot at the other individual (the victim) with a gun, four or five times in rapid succession, from where he was standing by a mailbox in front of 30 Auburn Street. Immediately thereafter, she heard the victim, who was later identified as Tyshawn Crawford, yell out that he had been shot, then saw him fall to the ground where he had been standing, directly across the street from the shooter, in front of 17 Auburn Street. Burney promptly dialed 911 on her cell phone, then went outside to assist the fallen victim. She never saw a weapon on or near the victim at any time. Burney later told the police that she had seen someone running away from the scene of the shooting but she "didn't give any description because there was a bunch of people that ran."

Melanie Solis, who lived on the third floor of the three-family residence at 18 Auburn Street, also was awakened in the early morning hours of July 12, 2014, by the sound of arguing outside the building. When she looked out of a window in the front of the building, she saw a man with braided hair, who was wearing a white tank top, standing by the mailbox in front of 18 Auburn Street and pointing a gun in the air. She then heard the man ask: "What [are] you going to do? What [are] you going to do?" After running away from the

front window toward the back of the residence, Solis heard five gunshots ring out in rapid succession. She then looked out of her kitchen window in the front of the building and saw the shooter, who was still wearing a white tank top, run to and enter a black car, in which he drove away in the direction of Winchester Street. At that time, as the victim lay on the ground across the street, Solis saw several people "fleeing into their houses." She then directed her mother to call 911. While her mother was on the phone with the 911 dispatcher, Solis informed her mother that the shooter had been shirtless when he fled the scene.[1] She did not talk to the detectives herself because she "was scared."

Officer Michael Dizaar of the Hartford Police Department responded to the scene. He first examined the victim, who was still lying on the ground in front of 17 Auburn Street and could not speak. Dizaar noticed a small hole in the victim's neck and a hole in the lower back of his shirt. The victim was transported to the hospital, where he was pronounced dead.

Dizaar then canvassed the neighborhood for information about the shooting, but encountered "some resistance" to his investigative efforts. He spoke with Burney, however, who reported that she had seen a shirtless man running away from the scene toward Westland Street. Officers found blood near a dumpster on the pavement of the driveway of 30 Auburn Street and on the front yard of 17 Auburn Street. They also found five .40 caliber shell casings on the driveway of 30 Auburn Street and a white shirt with bloodstains on it, size XXL, in the northwest corner of the courtyard/parking lot of 30 Auburn Street.

An autopsy later revealed that the cause of the victim's death was a single gunshot wound to the chest by a bullet that penetrated his right lung before exiting his body through the middle of his back. No bullet was recovered from the victim's body during the autopsy.

Forensic testing of blood samples recovered from the driveway of 30 Auburn Street and from the large bloodstain on the front of the white shirt recovered from the courtyard at that address revealed that both samples had been left by a person whose DNA profile was consistent with the defendant's profile but inconsistent with that of the victim. The expected frequency of such a DNA profile in the general population was less than one in seven billion. By contrast, forensic testing of a different blood sample taken from a separate bloodstain on the interior collar and right shoulder area of the same white shirt revealed that it contained a complex mixture of DNA profiles, potentially including the victim's profile, but definitely not including the defendant's, thereby eliminating the defendant as a possible contributor to that sample. Furthermore, separate forensic testing of a mixed sample of DNA removed postmortem from the fingernails of the victim's left

hand revealed multiple DNA profiles consistent with the profiles of both the defendant and the victim, thus making each of them a possible contributor to that sample. Finally, forensic testing of a particle removed from the bloodstained white shirt found in the courtyard of 30 Auburn Street revealed the presence of antimony and barium, two of the three essential elements necessary to establish the presence of gunshot residue. Testing of that particle did not reveal the presence of lead, the third essential element of gunshot residue.

The investigation caused the lead investigator, Michael Rykowski, a detective with the Hartford Police Department, to suspect that the defendant was the person who had shot and killed the victim. He subsequently interviewed the defendant, who denied any involvement in the shooting but admitted that in the overnight hours of July 11 and July 12, 2014, he had been smoking marijuana and drinking alcohol at 30 Auburn Street when he and the victim had a physical altercation, during which the defendant's white V-neck T-shirt had been removed. Although the defendant initially told Rykowski that he had left 30 Auburn Street on foot in the early morning hours of July 12, 2014, he stated later in the interview that he had left 30 Auburn Street that night in his uncle's black Mercedes sports utility vehicle. Rykowski noticed signs of a recent physical altercation on the defendant's person, including stitches on his lip, scratches on his throat, bandages on his knees, cuts on the back of his head, and a bandage on his right hand.

Kevin Barco, who was once a friend of the defendant, testified at trial that while he was incarcerated on unrelated charges, he contacted the police to give them information about the July 12, 2014 shooting. Barco and his family had received threats after the incident due to his friendship with the defendant. Barco testified that he had learned on Facebook that the victim had been shot. Thereafter, having received several phone calls reporting that the defendant was responsible for the shooting, he called the defendant to ask him what had occurred. When they later met, the defendant admitted to Barco that he had "fucked up," explaining that, "[w]hen [the defendant and the victim were] on Auburn Street, drinking, [the defendant] had a gun. He said [the victim] wanted his gun. [The defendant] wasn't trying to give it up. So, they started arguing . . . because they was both drunk. [The victim] started to fight him. They fought. [The defendant] got knocked out. [The victim] walked off. [The defendant] got up, I guess, tried to go in his aunt's house. When he turned around [the victim] was coming back. [The defendant] said that he wasn't going to fight [the victim] again and [the defendant] shot [the victim]."

The defendant was arrested in connection with the incident and charged with murder in violation of General Statutes § 53a-54a and criminal possession of a

firearm in violation of § 53a-217 (a) (1). He pleaded not guilty to both charges, elected a jury trial on the charge of murder, but waived his right to a jury trial on the charge of criminal possession of a firearm and elected a trial to the court. Following a jury trial on the charge of murder, the jury found the defendant not guilty. Thereafter, the court conducted a separate trial on the charge of criminal possession of a firearm based on the same evidence that the parties had presented to the jury on the murder charge,[2] and found the defendant guilty. The court reported its findings as follows: "Court exhibit number six, which was the stipulation that the defendant is a convicted felon, in that he was convicted of burglary in the second degree on August 2, 2011, which is a felony. As to the other element, possession of a firearm, the question is whether or not this defendant possessed a firearm, the court credited the following testimony, that . . . Burney heard an argument and she also heard and saw the flash of four to five shots fired in rapid succession. She also went outside to the victim and the evidence shows that the [victim] had died from a gunshot wound. . . . Solis [testified that] she also heard the shots and had her mother call 911. She saw someone fleeing from the scene, fleeing in a black car, and . . . at that time the mother was giving the information, and she told the mother the description of the person fleeing, and that person had no shirt on and fled in a black car. Although at trial, she did say that he was wearing a shirt, the court, however, finds the statement made closer in time to be relayed to the police officer, police department as to the description that included that the defendant was not wearing a shirt. Additionally . . . she identified the person fleeing as having braids. . . .

"The testing of the evidence on the shirt that the officer seized indicates that the defendant's DNA was on that shirt. Additionally . . . Rykowski indicated that he had located five shell casings and that the defendant admitted to him that he was there, and that he had an altercation with the deceased. . . . Barco, from the information that he saw on Facebook and phone calls he received, contacted the defendant and met with him, and the defendant admitted that he shot the deceased. And so, based on that evidence the court on the assessment of the credibility of the witnesses, the court finds . . . the defendant guilty of [the charge of criminal possession of a firearm]." The defendant was sentenced on the charge of criminal possession of a firearm to a term of ten years of incarceration. This appeal followed.

We first set forth the applicable legal principles governing our review of the defendant's claim. "In reviewing a sufficiency of the evidence claim, we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and

the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable." (Internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 151–52, 976 A.2d 678 (2009).

A person is guilty of criminal possession of a firearm pursuant to § 53a-217 (a) (1) when that person possesses a firearm and has been convicted of a felony. A " '[f]irearm' " is defined as "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ." General Statutes § 53a-3 (19).

I

The defendant first claims that the evidence was insufficient to sustain his conviction because the trustworthiness of his alleged inculpatory statement to Barco, on which the court principally relied as the basis for finding him guilty of the charged offense, was not corroborated by any evidence, much less by substantial independent evidence, as required by our state's corpus delicti rule. The state responds that the corpus delicti rule was not violated in this case because it introduced substantial independent evidence tending to establish the trustworthiness of the defendant's inculpatory statement to Barco. We agree with the state.

As a preliminary matter, we address the issue of preservation. The defendant has argued that his corpus delicti claim was preserved because he filed a motion for judgment of acquittal. The state initially countered that the defendant's corpus delicti claim was unpreserved and, therefore, unreviewable because the defendant had failed to raise that claim distinctly before the trial court. Following oral argument before this court, we stayed this appeal pending our Supreme Court's decisions in *State* v. *Leniart*, 333 Conn. 88, 215 A.3d 1104 (2019), and *State* v. *Robert H.*, 333 Conn. 172, 214 A.3d 343 (2019). In *Leniart*, our Supreme Court concluded that unpreserved corpus delicti claims are reviewable on appeal because the common-law corpus delicti rule is not merely evidentiary but, rather, is a hybrid rule that has both an evidentiary component and a substantive component that implicates the defendant's due process right not to be convicted in the

absence of sufficient evidence of his guilt. See *State* v. *Leniart*, supra, 98–110. In the companion case of *Robert H.*, supra, 175, our Supreme Court relied on *Leniart* in concluding that "even unpreserved corpus delicti claims are reviewable on appeal." Following those decisions, this court lifted the appellate stay in the present case and ordered the parties to submit supplemental briefs "addressing the impact, if any, of *State* v. *Leniart*, [supra, 88], and *State* v. *Robert H.*, [supra, 172], on this appeal." The state and the defendant agreed in their supplemental briefs that, as decided in *Leniart* and *Robert H.*, the defendant's corpus delicti claim is reviewable. We, of course, are bound by the Supreme Court's decisions in *Leniart* and *Robert H.*, and, thus, we agree with the parties that the defendant's corpus delicti claim is properly before us, even though it had not been briefed or argued before the trial court. We thus turn to the merits of that claim.

Recent case law has clarified the corpus delicti rule, also known as the corroboration rule, as follows. "It is a [well settled] general rule that a naked extrajudicial confession of guilt by one accused of crime is not sufficient to sustain a conviction when unsupported by any corroborative evidence. . . . This corroborating evidence, however, may be circumstantial in nature. . . . [The state is] require[d] . . . to introduce substantial independent evidence which would tend to establish the trustworthiness of the [defendant's] statement." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Harris*, 215 Conn. 189, 192–94, 575 A.2d 223 (1990). This "trustworthiness rule set forth in *Harris*, also known as the corroboration rule . . . applies to all types of crimes . . . . [A] confession is . . . sufficient to establish the corpus delicti of any crime, without independent extrinsic evidence that a crime was committed, as long as there is sufficient reason to conclude that the confession is reliable." (Internal quotation marks omitted.) *State* v. *Leniart*, supra, 333 Conn. 113, quoting *State* v. *Hafford*, 252 Conn. 274, 317, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000).

In other words, "[t]he present version of the corpus delicti rule, which applies to the admission of inculpatory statements involving all types of crimes, requires that the state present corroborative evidence to establish the trustworthiness of the statement, but that such evidence need not be sufficient, independent of the statements, to establish the corpus delicti." (Internal quotation marks omitted.) *State* v. *Andino*, 173 Conn. App. 851, 877, 162 A.3d 736 (quoting *State* v. *Hafford*, supra, 252 Conn. 316), cert. denied, 327 Conn. 906, 170 A.3d 3 (2017).

The defendant does not dispute that independent evidence tends to establish that a shooting occurred on July 12, 2014, near 30 Auburn Street, which was adjacent

to the residences of Burney and Solis. Burney testified that she saw a person standing near the mailbox at the entrance to the driveway of 30 Auburn Street shoot at the victim four or five times, after which the victim, who was standing across the street from the shooter, yelled that he had been shot and fell to the ground. Solis testified that the shooter, who was standing in front of a mailbox, pointed a gun in the air, then fired it five times in rapid succession. When Dizaar examined the victim, he saw a hole in the victim's neck and a hole in the back of his shirt. An autopsy later revealed that the cause of the victim's death was a gunshot wound to the chest by a single bullet that penetrated his right lung and exited his body through the middle of his back. The police recovered five .40 caliber shell casings from the scene.

The defendant also does not dispute that independent evidence tends to establish that he was at the scene of the shooting on the night in question and was drinking with the victim at that location before the two engaged in a physical altercation, which resulted in the defendant sustaining numerous injuries, including a temporary loss of consciousness. Forensic evidence also supports an inference that the victim and the defendant engaged in a physical altercation near 30 Auburn Street on the night in question. The defendant's DNA profile was found in blood recovered from the pavement of the driveway of 30 Auburn Street near a dumpster, in blood from a bloodstain on the front of a white shirt found in the courtyard of 30 Auburn Street, and in material removed postmortem from the fingernails of the victim's left hand. When Rykowski interviewed the defendant, moreover, he noticed what appeared to be recent physical injuries to the defendant's lip, throat, knees, head, and right hand.

The defendant disputes only the existence of substantial independent evidence tending to corroborate his identity as the person who possessed the firearm from which shots were fired at the victim on the night of July 12, 2014.[3] He contends that the independent evidence shows only that an unknown person possessed a firearm from which shots were fired at that location, and that such evidence was insufficient to demonstrate the trustworthiness of his inculpatory statement to Barco.

The independent evidence, viewed together with the previously recounted evidence that the defendant had engaged in a physical altercation with the victim on Auburn Street in the early morning hours of July 12, 2014, when the victim was shot, amply corroborates the defendant's statements to Barco that he possessed a firearm at that time, as the state alleged and the trial court found beyond a reasonable doubt. DNA evidence linked the white shirt found at the scene to both the defendant and to the victim. Solis testified that the man she saw standing by the mailbox, holding a gun, was

wearing a white tank top, and forensic analysis revealed that the white shirt found at the scene contained particles consistent with, although not definitively establishing, the presence of gunshot residue. Rykowski testified that the defendant had informed him that his white V-neck T-shirt had been removed during his altercation with the victim. Burney testified that, after the shooting, she saw a shirtless man running away from the scene. The victim, moreover, was wearing a shirt when Dizaar responded to the scene, thereby suggesting that the bloodstained white shirt did not belong to him. Furthermore, the injuries sustained by the defendant during his altercation with the victim support the inference that he had a motive to shoot the victim. See *State* v. *Farnum*, 275 Conn. 26, 34, 878 A.2d 1095 (2005) (evidence of motive can be used to identify defendant as perpetrator).

The defendant, however, contends that the court's reliance on certain portions of the state's evidence was misplaced because such evidence did not support an inference that he possessed a firearm on the night the victim was shot. We are not persuaded by these arguments, which merely offer differing interpretations of the evidence than those advanced by the state and credited by the court. In addressing these arguments, we are mindful that, although the corpus delicti rule requires the state to present evidence tending to corroborate the trustworthiness of the defendant's inculpatory statements, that evidence "need not be sufficient, independent of the statements, to establish the corpus delicti." (Internal quotation marks omitted.) *State* v. *Hafford*, supra, 252 Conn. 316; see also *State* v. *Andino*, supra, 173 Conn. App. 877. "The purpose of the corpus delicti rule is not to erase any doubt as to the accuracy of the accused's inculpatory statement, but to assure that such a statement is trustworthy because of the evidence that the criminal activity described therein actually has occurred. . . . [I]t is sufficient if the corroboration merely fortifies the truth of the confession without independently establishing the crime charged . . . ." *Wright* v. *Commissioner of Correction*, 143 Conn. App. 274, 301–302, 68 A.3d 1184, cert. denied, 310 Conn. 903, 75 A.3d 30 (2013).

The defendant first contends that the court improperly relied on Solis' prior inconsistent statement that the person she saw running to and entering a black car was shirtless. He notes that Solis, the only witness to provide a description of the shooter, described him as wearing a white tank top and testified that he was still wearing the white tank top when he entered the black car and fled from the scene. The defendant argues that this testimony from Solis necessarily excluded him as the shooter, because he admitted to Rykowski that his white V-neck T-shirt was removed during his earlier altercation with the victim and there was no evidence that the defendant was wearing a white tank top while

at 30 Auburn Street in the early morning hours of July 12, 2014. The court's decision, however, does not support the defendant's argument that it improperly relied on Solis' prior inconsistent statement for substantive purposes. Although the court mentioned Solis' prior inconsistent statement, it did not state that it relied on that statement for substantive purposes. "In the absence of any evidence to the contrary, [j]udges are presumed to know the law . . . and to apply it correctly." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 29 n.21, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 1245 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). Additionally, we determine that the trier of fact reasonably could have determined that Solis' testimony that the shooter fled following the shooting while wearing a white shirt was impeached by her prior inconsistent statement that the shooter fled while shirtless.

The defendant also argues that the evidence concerning the white shirt found at the scene shows that it more likely had been worn by the victim than by the defendant because the victim's DNA was found on the interior collar of the shirt. He also contends that because the white shirt in qestion was a size XXL, it was more likely worn by the victim, who was six feet, one inch tall and weighed 216 pounds, than by the defendant, who weighed only 165 pounds. The defendant further claims that the bloodstains on the front of the white shirt are consistent with the defendant having bled on the victim's shirt during the altercation.

The white shirt recovered from the scene contained both the defendant's and the victim's DNA, which was consistent with there having been a physical altercation between them. The fact that the white shirt was a size XXL, or that the blood swabbed from the interior collar of the shirt contained a complex DNA mixture that included the victim but not the defendant as a possible contributor, does not render the defendant's statements to Barco untrustworthy. When Heather Degnan, a forensic scientist, was asked by the state on direct examination whether the presence of the victim's DNA on the inside collar of the white shirt meant that the victim had touched or had been wearing the shirt, Degnan responded as follows: "I can't say. When we receive a sample we don't know how someone's DNA could've gotten onto an item. And in this case it was a mixture. . . . I can't tell you how it got on that item." When asked if the defendant could have been eliminated as a contributor to the blood swabbed from the inside collar of the shirt because there was not enough DNA to detect it, Degnan responded in the affirmative.

Although the defendant points to an alternative interpretation of the independent evidence, we do not examine such evidence to see if it can be viewed in a light supporting innocence but, rather, to determine if it forti-

fies the truth of the defendant's statements sufficiently to establish their trustworthiness. See, e.g., *Wright* v. *Commissioner of Correction*, supra, 143 Conn. App. 301–302. When viewed in such a light, the independent evidence indicates that the shooter, not the victim, was wearing the white shirt that was found at the scene, and that the defendant was the shooter. Prior to the shooting, the shooter had been seen wearing a white shirt and waving a gun in the air. The white shirt found at the scene contained both the defendant's and the victim's DNA, as well as elements consistent with gunshot residue. It is not reasonable to infer that the white shirt must have been worn by the victim because the responding officer found the injured victim to be wearing a shirt. Furthermore, the defendant admitted to Rykowski that he had been wearing a white shirt on the night in question but stated that the shirt had been removed during his altercation with the victim. The independent evidence thus corroborates the defendant's statement to Barco that he was the shooter. With regard to this argument, as with the defendant's other arguments concerning interpretations of the independent evidence that might have been made in his favor, we note that "[t]he corpus delicti does not have to be established beyond a reasonable doubt, or even by a preponderance of the evidence." *State* v. *Kari*, 26 Conn. App. 286, 290, 600 A.2d 1374 (1991), appeal dismissed, 222 Conn. 539, 608 A.2d 92 (1992).

The defendant further argues that Burney's testimony demonstrated *only* that an *unknown* individual fired four to five gunshots. He contends that Solis' testimony specifying that the shooter fled the scene in "a black car" excludes him as the shooter because he described the vehicle he used on the night in question as a black Mercedes sports utility vehicle. The defendant also notes that the court relied on Solis' testimony that the person fleeing had braids, although the state had introduced no evidence regarding the defendant's hairstyle during the early morning hours of July 12, 2014. We are not persuaded that Solis' more general description of the vehicle used by the shooter to flee the scene as a "black car" is inconsistent with the defendant's more specific description of the getaway vehicle as a black Mercedes sports utility vehicle. Rather, the evidence that the shooter fled the scene in a black vehicle and the evidence that the defendant was driving a black vehicle on the night in question tend to support, circumstantially, an inference that the defendant was the shooter. Furthermore, the state was not required to offer evidence as to the defendant's hairstyle on the night in question in order to prove the trustworthiness of his statements to Barco, as there was other independent evidence that substantially corroborated the defendant's inculpatory statements.

The defendant also argues that, when viewed in light of *State* v. *Andino*, supra, 173 Conn. App. 851, the evi-

dence adduced at trial was not corroborative of his alleged inculpatory statements to Barco that he had shot the victim. In *Andino*, the defendant, who was recognized and identified by two bystanders, and the victim were arguing in the parking lot of an apartment complex. Id., 854. The argument, which was overheard by residents, was related to the victim's sale of illegal drugs in the neighborhood. Id. The defendant threatened to shoot the victim and, ultimately, did shoot him before fleeing the scene. Id. Multiple witnesses overheard gunshots. Id. The victim, who sustained injuries that were not life threatening, was not cooperative with the investigating police officers and did not testify at trial. Id., n.2. The defendant waived his *Miranda*[4] rights and told a police detective that he had shot the victim because the victim had been selling drugs in an area that he and others controlled. Id., 855. We concluded that the trial court, in denying the defendant's motion for acquittal, properly determined that the state had sufficiently corroborated the defendant's inculpatory statement to the police, and properly concluded that the state had met its burden of proof as to the charge of criminal possession of a firearm in violation of § 53a-217 (a) (1). Id., 876–77. We determined that "the state proved that the defendant's statement was trustworthy by means of evidence that demonstrated that the defendant was at the scene of the crime, that he was involved in an altercation with the victim, that he threatened to shoot the victim, that a shooting occurred, and that the victim sustained a gunshot injury." Id., 877.

The defendant argues that in the present case, unlike in *Andino*, there was no independent evidence identifying him as the shooter, that he was at the scene *at the time* of the shooting, or that he threatened to shoot the victim. Although the evidence in *Andino* directly identified the defendant as the shooter; *State* v. *Andino*, supra, 173 Conn. App. 854; corroborative evidence that is circumstantial is not necessarily of lesser significance or probative value under the corpus delicti rule than direct evidence. See, e.g., *State* v. *Harris*, supra, 215 Conn. 194–95. In the present case, circumstantial evidence, in the form of DNA and forensic evidence, linked the defendant to the scene at the time of the shooting. Solis' testimony linked the defendant to the white tank top that was worn by the shooter. A reasonable inference can be drawn that the white shirt found at the scene was worn by the shooter, given that it contained particles consistent with gunshot residue, and that Solis testified that the man she saw holding a gun by the mailbox was wearing a white tank top.

We conclude that the state adduced substantial independent evidence of the trustworthiness of the defendant's statements to Barco that he possessed a firearm. It thus was reasonable for the trier of fact to consider and rely on the defendant's statements in determining if the state had proved beyond a reasonable doubt that

the defendant was guilty of criminal possession of a firearm. Accordingly, we reject the first aspect of the defendant's claim of evidentiary insufficiency.

II

The defendant further claims that, even if the trustworthiness of his statement to Barco was sufficiently corroborated to satisfy the corpus delicti rule, the state's evidence against him, including Barco's statement, was too unreliable to sustain his conviction for criminal possession of a firearm. We disagree.

To convict the defendant of criminal possession of a firearm, the state was required to prove beyond a reasonable doubt that the defendant was a convicted felon and that he possessed an operable firearm that was then capable of discharging a shot. See General Statutes § 53a-217 (a) (1). The state and the defendant stipulated that the defendant had been convicted of a felony. Evidence was presented, moreover, that the defendant possessed a firearm capable of discharging a shot, because two witnesses saw the shooter holding the weapon and heard the shooter discharge it five times in rapid succession, with one such discharge firing a bullet that caused the victim's death. Furthermore, the defendant told Barco that he and the victim had argued and physically fought with one another because the victim wanted the defendant's gun, and that he had shot the victim with that very gun when the victim, who had knocked the defendant unconscious in the fight, began to approach him again after he had regained consciousness. This admission, when combined with the independent evidence described in detail in part I of this opinion and the stipulation that the defendant was a convicted felon, furnished a sufficient evidentiary basis for the court to find beyond a reasonable doubt that the defendant committed the crime of criminal possession of a firearm.

The defendant further argues that the evidence was insufficient to support his conviction because Barco, who obtained both his freedom and monetary gain in exchange for his testimony, "was a profoundly unreliable witness." The court, however, credited the defendant's confession to Barco, and it is not our role on appeal to question determinations of credibility. "Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Osoria*, 86 Conn. App. 507, 514–15, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005).

The defendant also argues that Solis was the only

witness to describe the shooter but that her description excluded the defendant as the shooter. Although Solis described the shooter as having fled the scene wearing a shirt, her prior inconsistent statement was admitted as impeachment evidence. The defendant admitted to Rykowski that he was wearing a white V-neck T-shirt that was removed during his physical altercation with the victim. Although Solis' description of the shooter and the defendant's statement to Rykowski conflict, "[i]t is well settled . . . that [e]vidence is not insufficient . . . because it is conflicting or inconsistent. . . . Rather, the [finder of fact] [weighs] the conflicting evidence and . . . can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Citation omitted; internal quotation marks omitted.) *State* v. *Ocasio*, 140 Conn. App. 113, 119 n.7, 58 A.3d 339, cert. denied, 308 Conn. 909, 61 A.3d 531 (2013). Accordingly, the defendant cannot prevail on this aspect of his insufficiency claim.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The court instructed the jury to consider this inconsistent statement only as it related to Solis' credibility.

[2] The state requested that the court rely on the same evidence when considering the charge of criminal possession of a firearm as it had presented to the jury on the charge of murder. The defendant had no objection to the state's request.

[3] Generally, identity is not part of the corpus delicti of a crime. See, e.g., *State* v. *Berkowitz*, 24 Conn. Supp. 112, 118–19, 186 A.2d 816 (App. Div.), cert. denied, 150 Conn. 712, 204 A.2d 933 (1962). The defendant argues that identity is part of the corpus delicti of the status offense of criminal possession of a firearm because that offense requires proof that the person who possessed the firearm is a convicted felon. The state agrees with the defendant that corroborative evidence must implicate the defendant in order to show that a crime has been committed. We agree with both parties that the corpus delicti of § 53a-217 (a) (1) cannot be established without identifying the person who committed the offense as a convicted felon. See, e.g., *Smith* v. *United States*, 348 U.S. 147, 153–54, 75 S. Ct. 194, 99 L. Ed. 192 (1954) (with crime such as tax evasion that lacks tangible injury, "it cannot be shown that the crime has been committed without identifying the accused"); *United States* v. *Brown*, 617 F.3d 857, 862 (6th Cir. 2010) ("when an accused confesses to a crime for which there is no tangible injury and it cannot be shown that [a] crime has been committed without identifying the accused . . . the corroborative evidence must implicate the accused" (citation omitted; internal quotation marks omitted)).

[4] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 88 S. Ct 1602, 16 L. Ed. 2d 694 (1966).